UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSE DONES,

                Petitioner,                              08 Civ. 926 (RJH)

       - against -                          **<u>MEMORANDUM OPINION</u>**
                                                           **<u>AND ORDER</u>**

UNITED STATES,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Jose Dones has petitioned pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the judgment against him and the sentence imposed upon him after he pled guilty to one count of conspiring to distribute five grams or more of cocaine in violation of 21 U.S.C. § 846. He alleges that the government engaged in sentence manipulation and entrapment, and that his trial and appellate attorneys were ineffective. For the reasons that follow the petition will be denied.

### BACKGROUND

The relevant facts as they appear from the record of prior proceedings in this case are as follows. In early December 2003, an FBI confidential informant (CI) engaged petitioner at the Bronx barbershop where petitioner worked, purporting to be a *bona fide* customer. (Sent. Tr. 18.) According to petitioner, the CI originally tried to purchase drugs and guns from or through him, but was repeatedly rebuffed. (*Id*.) Petitioner says that, as the haircuts continued, he eventually told the CI that he would be willing to engage in theft if the opportunity presented itself. (*Id.* at 19 ("I told him that I was a

1

thief…").) The CI shortly thereafter told petitioner an invented story of a warehouse in Brooklyn where large quantities of unsecured narcotics and cash were kept, and suggested that petitioner could recruit a crew to go steal them. (Pet.'s Mot. 3; Gov.'s Mot. 2.) The FBI brought in an undercover agent (UC), supposedly the CI's cousin, who posed as the mistress of a drug trafficker who was willing to betray the drug trafficker's trust and reveal the stash. (Pet.'s Mot. 3; Gov.'s Mot. 2.) Petitioner contends that she plied him with alcohol, flirtation, and her story of needing to use proceeds from the theft in order to escape a life of crime. (Pet.'s Mot. 2-3.) Confronted with this opportunity, he agreed to steal the stash. (Pet.'s Mot. 3.)

Petitioner was given conflicting information about the quantity of narcotics that would be in the stash. Over the course of the set-up for the reverse sting, the CI and UC referenced quantities of cocaine varying from 30kg to 100kg in their conversations with Dones. (*See* Gov.'s Mot. Ex. H.) Just before the sting was finally carried out, the CI told petitioner that there were 80 kg of narcotics in the stash, and he agreed to go check it out in the hopes of stealing the drugs. (Comp. ¶ 7.) Petitioner never indicated any hesitancy based on the amount of drugs, and the FBI has not indicated how it decided on the quantity to be used in the sting.

On January 21, 2004, the UC gave petitioner the address of a warehouse in Brooklyn where the cocaine was supposedly stored. (*Id.*) Petitioner recruited Elvis Pena and Angel Cabrera-Abreu to assist him, and early the next morning the men drove to the warehouse where petitioner and Cabrera-Abreu removed sham cocaine that the FBI had placed there as part of the sting (Pena was driving the car). (Gov.'s Mot. 2.) Their actions were recorded on videotape, and they were arrested near the warehouse. (*Id.*)

Petitioner was indicted on October 5, 2004 for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846.[1] (*Id.*) The indictment alleged that they planned to steal more than 50kg of cocaine, and that petitioner was an organizer, leader, manager or supervisor of the conspiracy. (*Id.*)

Petitioner was initially represented by Richard Boulware, Esq. (*Id.*) On January 25, 2005, while represented by Mr. Boulware, petitioner filed a *pro se* motion moving to dismiss the indictment on the grounds that he was entrapped and that he could not have legally conspired with an informant who did not intend to carry out the crime.[2] (*Id.* at 2-3.)

On February 25, 2005 the Government provided petitioner with a letter pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), setting forth a non-binding estimate of his anticipated sentence. (*Id.* at 3.) The government projected that: (1) pursuant to U.S.S.G. § 2D1.1(c)(2) petitioner's base offense level was 36 because the quantity of narcotics the group conspired to acquire was 80kg; (2) pursuant to U.S.S.G. §

---

[1] Petitioner repeatedly objects that the indictment refers to a 'detectable quantity of cocaine' when 'sham cocaine' was used in the sting. Contrary to his arguments, he was *not* indicted for stealing actual cocaine. Rather, the indictment was for conspiring – planning with others – to obtain and distribute cocaine, and plaintiff admits that with Pena and Cabrera-Abreu he planned to obtain and distribute cocaine. As far as the law of conspiracy is concerned, it does not matter whether there was actually any cocaine to steal. *E.g. United States v. Jimenez Recio*, 537 U.S. 270, 274-6, 123 S.Ct. 819 (2003) (explaining why a conspiratorial "agreement is a distinct evil, which may exist and be punished whether or not the substantive crime ensues") (internal citations and quotation marks omitted). In layman's terms, conspiracy law focuses on the *plans* of the conspirators, and makes criminal what petitioner and his co-conspirators *agreed* and *attempted* to do, even if it was impossible for them to succeed because the cocaine was fake.

[2] Petitioner apparently misunderstood the nature of the indictment. The indicted conspiracy was with Pena and Cabrera-Abreu, not the CI or UC, so petitioner's argument that it is "legally impossible for petitioner to have a conspiracy with government agents" fails. (Pet's Mot. 12.) Although the agreement was to share some of the drugs with the CI and the UC, the first step of the plan was for petitioner, Pena, and Cabrera-Abreu to acquire the full stash and to distribute it thereafter. Petitioner does not dispute planning or attempting to rob the stash with Pena and Cabrera-Abreu, nor does he allege that they were government agents.

3

3B.1.1(c) a two level increase in petitioner's offense level was warranted in light of his role as a leader of a scheme of less than five people; (3) the offense level would be reduced by two levels in light of petitioner's acceptance of responsibility of his actions; (4) a further one level reduction would be available if petitioner pled guilty in a timely fashion; and (5) the adjusted offense level was 35. (*See* Gov.'s Mot. Ex. C.) The Government also determined that petitioner's criminal history level was VI because of prior state convictions for criminal possession of narcotics in the fourth degree, criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the second degree, and criminal possession of a weapon in the third degree. (Gov.'s Mot. at 3-4.) As petitioner had at least two prior felony convictions of a controlled substance and the most recent charge was a controlled substance offense, petitioner was considered a "career offender." (*Id.*) The Government therefore concluded that petitioner's likely Guidelines range was 292 to 365 months' incaraceration. (*Id.*)

On March 8, 2005, petitioner requested new counsel, and Daniel Nobel, Esq. was appointed to represent him. (Gov.'s Mot. 2.) On May 8, 2005, petitioner sent a *pro se* letter to the Court stating that while he did not wish to go to trial, he was worried that the indictment did not reflect the actual events that transpired. (Pet.'s Aff. ¶ 3.) In his letter, petitioner claimed that he was guilty only of attempted robbery, not the drug related charges, because the drugs actually used were fake. Petitioner further asserted an entrapment defense based on the role of the CI and UC in setting up the sting and in encouraging petitioner to recruit Pena and Cabrera-Abreu for the conspiracy. (Gov.'s Mot. Ex. D.)

Petitioner appeared before this Court on May 17, 2005, and pled guilty to one count of narcotics conspiracy in violation of 21 U.S.C. § 846. (*See* Plea Tr., Gov.'s Mot. Ex. E.) Petitioner's counsel, Mr. Nobel, advised the Court that he had discussed with petitioner the issues in the January 25 *pro se* motion and May 8 letter and that petitioner understood the issues and wished to plead guilty. (*Id.* at 2.) Mr. Nobel declined to reassert petitioner's January 25 *pro se* motion on petitioner's behalf, as he felt that he could not adopt petitioner's legal arguments because they were without merit. (Plea Tr. 7, 20.) The Court established the factual basis of the plea, that petitioner acknowledged he conspired to steal cocaine, (*Id.* at 19-20), and advised petitioner that if he pled guilty he would waive any possible defenses he might present at trial, including entrapment. (*Id.* at 20.) The Court further inquired of Mr. Nobel whether he had considered the entrapment defense in advising his client to plead guilty:

> THE COURT: Mr. Dones, in your letter to the Court dated May 8 you raise a number of issues, including a defense that you were entrapped?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that by pleading guilty you're giving up or waiving this defense?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Mr. Nobel, have you discussed this defense with your client?
>
> MR. NOBEL: I have, your Honor.
>
> THE COURT: And is it still your recommendation that defendant continue with the plea of guilty?
>
> MR. NOBEL: Yes, your Honor. After review of the discovery and discussion, very frank discussion with Mr. Dones, it was my opinion that he could not be successful before a jury with that defense, your Honor.

(*Id.*) Petitioner acknowledged that he understood the ramifications of a guilty plea and still wished to plead guilty to the charges in the indictment. (*Id.* at 14.) Petitioner also said that he was satisfied with Mr. Nobel's assistance:

> THE COURT: … Mr. Dones, have you had the opportunity to discuss this case with your counsel, including any possible defenses that you might have and the consequences of entering a guilty plea?
>
> THE DEFENDANT: Up to now, yes, sir.
>
> THE COURT: And are you satisfied with your attorney's representation of you?
>
> THE DEFENDANT: Up to this time, yes.

(*Id.* at 10.) The Court explained the sentencing process to petitioner in detail, (*Id.* at 16-18), accepted the plea, and ordered that a presentence report be prepared in advance of sentencing.

Petitioner fared better in the Presentence Report than he had in the Government's *Pimentel* letter. In the Presentence Report the probation officer found that petitioner's criminal history level was IV, not VI as the Government had projected, because petitioner's earlier state convictions did not meet the definition of a "controlled substance offense." (Gov.'s Mot. 7.) Accordingly the probation officer recommended 235 to 293 months' incarceration. (*Id.*) The Government did not dispute the probation officer's determinations. (*Id.* at 8.)

Prior to sentencing, Mr. Nobel argued in two submissions that petitioner's sentence should be reduced because of the nature of the reverse sting operation which allowed the government to set the quantity of drugs and in turn the offense level. (Sent. Tr. 5-6, Gov.'s Mot. Ex. J.) On November 4, 2005, petitioner's sentencing hearing was conducted, and Mr. Nobel reasserted those arguments. After a lengthy sentencing

6

hearing petitioner was sentenced to 182 months imprisonment with five years of supervised release, a downward departure from the guidelines range. (*Id.* at 20.)

Petitioner appealed his conviction, and Arza Feldman, Esq. was appointed his counsel for the appeal. Because she found that there were no non-frivolous issues for appeal, Feldman filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), seeking to be relieved as counsel. (Consolidated *Anders* Br. of App., *United States v. Dones*, No. 05-6339, 9 (2d Cir. May 24, 2006), Gov.'s Mot. Ex. J.) Shortly thereafter petitioner filed two *pro se* documents with the Court of Appeals, one complaining that Ms. Feldman had not communicated with him prior to filing her *Anders* brief, and another styled as a supplemental appellate brief laying out essentially the same entrapment and sentence manipulation arguments that he raises in this collateral attack. (Gov.'s Mot. Ex. M, N.) Petitioner did not at that time contest his guilty plea or allege that Nobel had been ineffective.

On September 12, 2006, the Second Circuit issued an order holding in abeyance Ms. Feldman's *Anders* brief and the Government's motion for summary affirmance until Ms. Feldman filed an affidavit demonstrating that (1) she had explained to petitioner in Spanish the contents of the *Anders* brief, (2) she had explained in Spanish that the filing of the brief would most likely result in a dismissal of his appeal and an affirmance of the conviction, (3) she had advised petitioner that he could request other counsel or submit a *pro se* brief directly to the Court of Appeals, and (4) that she had served him with a copy of the order. (Gov.'s Mot. 10.) Ms. Feldman filed the required affidavit on November 2, 2006. Petitioner then requested new appellate counsel and re-filed his supplemental brief with the Court of Appeals. (*Id.*) On November 22, 2006 the Second Circuit granted Ms.

Feldman's motion to be relieved pursuant to *Anders* and summarily affirmed petitioner's conviction and sentence. (*Id.* at 11.)

On January 14, 2008, petitioner filed this petition pursuant to 28 U.S.C. § 2255. He asserts that his sentence or conviction should be set aside because (1) he received ineffective assistance from his trial counsel, Mr. Nobel; (2) he received ineffective assistance from his appellate counsel, Ms. Feldman; (3) he was entrapped by the government's agents; and (4) the government engaged in an unfair manipulation of his sentencing factors by setting the quantity of narcotics available in the reverse sting above what he would have otherwise involved himself with. For the reasons that follow, the petition is dismissed.

## DISCUSSION

28 U.S.C. § 2255 provides for collateral attack on federal criminal judgments. "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted); 28 U.S.C. § 2255. Courts limit relief in respect for finality of criminal sentences, a desire to use judicial resources efficiently, and a distaste for retrying issues years after the events took place. *United States v. Bokun*, 73 F.3d at 12.

### A. Entrapment and Sentencing Manipulation

Petitioner argues that he is the victim of entrapment. However entrapment is an affirmative defense, and a defendant who knowingly and voluntarily enters a guilty plea

waives all non-jurisdictional defenses, including the defense of entrapment. *See United States v. Calderon*, 243 F.3d 587, 590 (2d Cir. 2001). Petitioner acknowledged in open court and under oath during his plea hearing that he understood the allegations against him and understood that they carried up to a life sentence. He acknowledged that he understood he was waiving the right to assert any defense, including entrapment. (Plea Tr. 20.) Although he now avers otherwise, "[a] defendant's bald statements that simply contradict what he said at his plea allocation are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Therefore petitioner's knowing and voluntary plea waived his entrapment defense and § 2255 relief is inappropriate.

Petitioner also argues that the Government engaged in "sentencing manipulation" or "sentencing entrapment." "Sentencing manipulation has been described as occurring when the Government engages in improper conduct that has the effect of increasing the defendant's sentence." *United States v. Caban*, 173 F.3d 89, 93 n.1 (2d Cir. 1999) (internal quotation marks omitted). Sentencing entrapment is a distinct concept and normally requires "that a defendant convince the fact-finder that government agents induced her to commit an offense that she was not otherwise predisposed to commit." *Id.* (internal quotation marks omitted). The Second Circuit has not recognized sentencing manipulation or sentencing entrapment as a basis for post-conviction relief. *Cf. United States v. Bala*, 236 F.3d 87, 93 (2d Cir. 2000) (noting uncertainty as to whether sentencing manipulation and sentencing entrapment are valid grounds for a downward departure under the Sentencing Guidelines). This Circuit has noted that "even where [sentencing entrapment] has been approved in theory, its potential application has been

limited to outrageous conduct which overcomes the [defendant's] will." *United States v. Knecht*, 55 F.3d 54, 57 (2d Cir. 1995) (citing *United States v. Barth*, 990 F.2d 422, 424 (8th Cir. 1993); *United States v. Gomez*, 103 F.3d 249, 255 (2d Cir. 1997). Although there is a troubling arbitrariness to the discretion exercised by the government whenever it sets the quantity of drugs available in a reverse sting, there is no evidence in this case of "improper" or "outrageous" conduct and, therefore, the Court does not find that the government has engaged in sentencing entrapment or sentencing manipulation.

Moreover, the Court notes that petitioner's sentence was substantially reduced below the guidelines range in light of the circumstances of petitioner's crime. In pre-sentence briefing and at petitioner's sentencing hearing Mr. Nobel argued extensively for a guidelines departure based on the government's control of the quantity of drugs. This Court then determined that a downward departure from the Guidelines was appropriate, and explained that:

> "While a sentence in the guideline range would ordinarily be appropriate, there are circumstances in this case that warrant a modest reduction below that range.
> The court does not find… that the government has engaged in sentencing entrapment or sentencing manipulation. However it is true that in a reverse sting operation it is the government, at least in the first instance, that sets the amount of drugs and therefore the offense level…
> Defendant was indeed a willing participant, but the numbers tend to overstate defendant's criminality and his danger to the community…"

(Sent. Tr. at 23.)

**B.      Ineffective Assistance of Trial Counsel**

Although Petitioner did not assert on direct appeal that his trial counsel was ineffective, the Supreme Court has held that an ineffective assistance of counsel claim may be raised in a § 2255 petition even if it was not raised on direct appeal. *Massaro v.*

10

*United States*, 538 U.S. 500, 509 (2003). Accordingly the Court will address petitioner's ineffective assistance of counsel claims. Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel because (1) Nobel failed to raise the issue of entrapment; (2) Nobel failed to raise a sentence manipulation argument; (3) Nobel advised him to plead guilty without having the first two issues resolved; (4) Nobel declined to present petitioner's *pro se* motion which raised those arguments; and (5) Nobel failed to advise petitioner of Rule 11(a)(2), which provides for a conditional plea of guilty preserving the right to have appellate review of an adverse determination in a specific pre-trial motion.[3] Fed. R. Crim. P. 11(a)(2).

Essentially, petitioner's ineffective assistance claims with respect to Nobel relate to his decision to advise plaintiff to plead guilty rather than to press the issues of entrapment or sentence manipulation at trial. "Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid." *United State of America v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002). A claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel is evaluated under *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *See also United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). To establish ineffective assistance of counsel under *Strickland*, the "convicted defendant must show both (a) 'that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms,' and (b) 'that the deficient performance prejudiced the defense,' i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Henry v. Poole*, 409 F.3d 48, 64 (2d. Cir 2005) (quoting *Strickland*, 466 U.S. at 688).

---

[3] Although petitioner indicates that he would like to have preserved his entrapment defense and sentencing manipulation argument, he does not identify a specific adverse determination by the trial court from which an appeal could be preserved.

11

In considering the first prong, "whether counsel's performance fell below an objective standard of reasonableness, a court must bear in mind both that counsel 'has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process,' and that counsel must have 'wide latitude' in making tactical decisions. Thus, the court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 688-89). Petitioner has not overcome the strong presumption that Nobel's performance was reasonable. Nobel was aware of a potential entrapment defense, and counseled petitioner regarding its elements and likelihood of success. (Plea Tr. 10.) After a frank discussion with petitioner, Nobel advised him that he did not think he would be likely to succeed with a jury on the entrapment defense. *Id.* All of this falls within the range of reasonable professional assistance.

Nor was Nobel's advice unfounded. Entrapment is an affirmative defense that must be proven by the defendant at trial, and it requires both (1) inducement by the government *and* (2) lack of predisposition on the part of the defendant. *United States v. Dyman*, 739 F.2d 762, 770 (2d Cir. 1984) (quoting *United States v. Williams*, 705 F.2d 603, 619 (2d Cir. 1983)). Predisposition refers to whether the defendant was ready and willing to commit the offense at the time he was approached by the government. *Id.* Petitioner admitted under oath that he had a willingness to engage in theft *before* the reverse sting was presented to him ("I told him that I was a thief…" (Sent. Tr. 19.)), and

12

it was based on that expression of willingness that the government set the trap. Accordingly, it would have been very difficult for petitioner to convince a jury that he was not predisposed to theft at the time the opportunity for the heist was offered to him. Moreover, in light of petitioner's prior drug convictions, it would have been equally difficult to persuade a jury that he was not predisposed to trafficking in narcotics. Given the record before this Court Nobel had ample justification for concluding that the entrapment defense would not succeed and for so advising his client.

Even assuming for the sake of argument that petitioner's entrapment defense was strong enough that his counsel's advice otherwise was unreasonable, petitioner cannot demonstrate that he was prejudiced by that advice. When dealing with the decision to enter a guilty plea, "in order to satisfy the 'prejudice' requirement of *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet in the letter petitioner sent to the Court shortly before the plea hearing, he asserted that: "I am by no means willing to go to trial with the case and I am not trying to portray that I am innocent either." (Gov.'s Mot. Ex. D (describing his drug quantity and entrapment concerns).) It is therefore unlikely that petitioner would have insisted on going to trial if Nobel had been more ambivalent about his entrapment defense.

As to challenging the quantity of drugs attributable to petitioner (the sentence manipulation and entrapment arguments), Nobel in fact addressed those arguments thoroughly in his pre-sentence briefs and at the sentencing hearing. Based in part on those arguments, petitioner received a sentence significantly below the guidelines range.

Accordingly, Mr. Nobel cannot be said to have been ineffective on the basis of a failure to make those arguments.

## C. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective because she filed an *Anders* brief without meeting with him, and in turn failed to raise any of the issues that he believes support his position. The *Strickland* standard for ineffective assistance of trial counsel is also used with respect to appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). A petitioner must (1) overcome the presumption that his counsel's conduct was reasonable, and (2) affirmatively prove prejudice. *See Id.*; *Strickland v. Washington*, 466 U.S. at 687-94.

Petitioner has failed to show that Feldman's representation fell below an objective standard of reasonableness. In fact, Feldman was plainly reasonable in filing an *Anders* brief because none of the issues raised by petitioner have merit. Similarly, petitioner cannot demonstrate prejudice because it is unlikely that the outcome would have been different had Feldman raised those non-meritorious issues on direct appeal, especially considering that petitioner himself presented those issues to the panel in his *pro se* brief and his conviction was nonetheless summarily affirmed.

Petitioner's allegation that he was denied effective assistance of counsel because Feldman filed the *Anders* brief without first speaking with him does not avail either. An attorney who finds no non-frivolous issues for appeal does not necessarily have to meet with his or her client in person before filing an *Anders* brief, so long as the *Anders* notice requirements are met, in order to satisfy his or her duty to the client. *See Santana v. United States*, 876 F.Supp. 48, 51-52 (S.D.N.Y. 1995) (meeting with client not required);

*Cf. United States v. Santiago*, 495 F.3d 27, 30 (2d Cir. 2007) (holding that appellate counsel must make reasonable efforts to meet in person with clients when there is reason to believe that client is illiterate and will be unable to read *Anders* notice). Feldman therefore did not provide inadequate representation merely because she did not first discuss the appeal with petitioner. Moreover there could be no prejudice because petitioner has not shown any likelihood that he could have conveyed any information or guidance that would have led Feldman to develop a meritorious issue for the appeal.

## CONCLUSION

For the reasons stated above, the Clerk of the court is directed to dismiss the petition and close the above-captioned action.

SO ORDERED

Dated: New York, New York
January 19, 2010

Richard J. Holwell
United States District Judge

15